IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| GUILLERMO WIDON GOMEZ, | : |
| Plaintiff, | : |
| VS. | : |
| | : 7 : 15-CV-72 (WLS) |
| COII DANIEL RAY, | : |
| Defendant. | : |

**ORDER and RECOMMENDATION**

Presently pending in this action brought pursuant to 42 U.S.C. § 1983 are Defendant Ray's Motion to Dismiss (Doc. 36), as well as various motions filed by Plaintiff (Docs. 45, 48, 51, 52). The Court notified the Plaintiff of the filing of Defendant Ray's Motion to Dismiss and directed him to respond thereto within thirty (30) days of the Court's Order. (Doc. 38). The Plaintiff has filed responses to Defendant's motion. (Docs. 42, 46).

Plaintiff brought this action in May 2015, raising failure to protect claims arising out of an inmate attack at Valdosta State Prison. (Doc. 1). Plaintiff alleges that he was attacked by a fellow inmate on February 27, 2015, as Defendant Ray put Plaintiff back into his cell. Plaintiff asserts that the inmate had a knife and was threatening to stab Plaintiff prior to Ray placing Plaintiff in the cell, and that Ray was deliberately indifferent to the risk of harm to Plaintiff.

*Motion to Dismiss*

Defendant Ray has filed a Motion to Dismiss, asserting that the Plaintiff has failed to exhaust his administrative remedies prior to filing this lawsuit. (Doc. 36). A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

In regard to exhaustion of administrative remedies, the Prison Litigation Reform Act ("PLRA") mandates that all prisoners wishing to bring suits pursuant to § 1983 based on conditions of confinement violations must exhaust all available administrative remedies prior to filing a federal action. The Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e (a). In order to satisfy the exhaustion requirement, an inmate must fully pursue all available administrative remedies, including pursuing and completing all levels of appeal. *Moore v. Smith*, 18 F. Supp. 2d 1360, 1363 (N.D.Ga. 1998); *Harper v. Jenkin*, 179 F.3d 1311 (11th Cir. 1999) (inmate who failed to seek leave to file an out-of-time grievance failed to exhaust his administrative remedies as required by the PLRA). "An inmate must use all steps in the administrative process and comply with any administrative deadlines and other critical procedural rules before exhaustion is proper. Thus, if an inmate has filed an 'untimely or otherwise procedurally defective administrative grievance or appeal', he has not properly exhausted his administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 89-92 (2006).

The Court notes that, as set out by the Defendant, Plaintiff may have immigration matters pending, but the fact remains that he is in custody as a convicted prisoner and is therefore subject

2

to the requirements set forth in the PLRA.  *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (PLRA applies to persons incarcerated as punishment for a criminal conviction).

The Eleventh Circuit has held that

> deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process. First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

In response to Defendant Ray's Motion to Dismiss, Plaintiff asserts that he complied with the grievance process by filing a grievance on March 2, 2015, and that he gave the staff opportunity to resolve the problem.  (Doc. 42).   Plaintiff's claims therefore are not subject to dismissal pursuant to the first step of the *Turner* analysis.  *See Whatley v. Warden, Ware State Prison*, -- F.3d --, 2015 WL 5568465 *5 (11th Cir. 2015) (under *Turner* analysis, court must accept plaintiff's facts as true and ask whether, given those facts, the alleged grievances exhausted administrative remedies; court must make specific findings to resolve disputed factual issues related to exhaustion).

Defendant Ray establishes, by means of the affidavit testimony of Shunda Woods, the Grievance Coordinator/Chief Counselor at Valdosta State Prison, that a statewide grievance process was in place at the Georgia Department of Corrections, and specifically at Valdosta State Prison, at the time of the incident underlying this lawsuit.  (Doc. 36-2, ¶¶ 3-4).   According to Wood's affidavit testimony, the grievance process available to Plaintiff includes two (2) steps, the

filing of an original grievance and a Central Office Appeal. *Id.* at ¶¶ 7, 16. The original grievance is screened by the Grievance Coordinator, who makes a recommendation to the Warden to either reject or accept the grievance for further consideration and investigation. If the grievance is accepted for further consideration, and ultimately rejected on the merits, the inmate has seven (7) days to appeal the Warden's response, or he may appeal after the 40-day time period for the Warden's decision has expired. *Id.* at ¶¶ 15, 17.

According to Counselor Woods, Plaintiff filed a grievance on February 27, 2015 alleging that Defendant Ray knowingly placed him in a cell with another inmate who had a knife, and that inmate stabbed Plaintiff in the face. *Id.* at ¶ 20. According to Woods, "[t]hat grievance was sent for further investigation on May 21, 2015. There is no record of any appeal being filed." *Id.*

Plaintiff asserts that he did not receive a response to his grievance within forty (40) days of submitting it, and that he did not receive a response from the Warden until May 25, 2015, in which he was told that his grievance was sent to the internal investigation unit. (Doc. 42). In documents attached to his Complaint, Plaintiff states that he is "appealing my Grievance to the Grievance investigation unit". (Doc. 1-4, p. 3). In his Complaint, Plaintiff states that "I was sent a receipt from the grievance 10 days later from the date I submitted from counselor McKinnon, but I never recieved [sic] a response at the 40 day limitation. I submited [sic] a grievance on 3-2-15. I wrote letters to Warden Marty Allen on 3-15-15 and I wrote letter to inmate affairs on 4-21-15. I wrote letter to chief counselor Woods on 4-20-15. I talked to her in front of my cell on 3-28-15." (Doc. 1, p. 2).

"[W]hen a state provides a grievance procedure for its prisoners . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). "[T]o properly exhaust administrative remedies prisoners must complete the

4

administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Toenniges v. Georgia Dept. of Corrections,* 600 F. A'ppx 645, 648 (2015) (prisoner must complete review process according to rules set forth in prison grievance system itself).

The Court finds that the Plaintiff has not exhausted his failure to protect claim pertaining to the February 2015 inmate attack, in that, he has not utilized all available remedies to grieve this alleged offense. The affidavit testimony in support of the Defendant's Motion to Dismiss establishes the presence of a grievance process at Valdosta State Prison, which was made known to Plaintiff, and establishes that the Plaintiff did not complete the process regarding his claims prior to filing this lawsuit. According to Counselor Woods, the prison grievance policy provides that if a prisoner has not received a response to his grievance after the passage of 40 days from the submission of a formal grievance to a counselor, the prisoner may file a Central Office Appeal.

> If the Warden is late in responding, the inmate can also wait until he receives a written response from the Warden to file a Central Office Appeal. Either way, an inmate can file only one Central Office Appeal per grievance. If an inmate decides to file a Central Office Appeal, he has seven (7) calendar days to do so, running from the date he receives the Warden's written response, or the expiration of time for same, whichever the inmate chooses. . . This Central Office Appeal response is the last step in the GDOC's grievance procedure.

(Doc. 36-2, ¶¶ 16, 17, 19).

Herein, Plaintiff did not receive a response to his grievance within the 40-day time period, nor was there any extension of this time period. However, Plaintiff did not appeal this lack of response prior to the filing of this lawsuit, in which Plaintiff executed his Complaint on April 23, 2015. (Doc. 1). The grievance reflects that it was dated February 27, 2015 and received by prison officials on March 2, 2015. (Doc. 36-6). The Institution Response date was set at April 11,

5

2015.  *Id.*  The grievance was ultimately "partially granted" on May 21, 2015, with a report sent to "appropriate staff for review and determination regarding further investigation and action."  *Id.*

Although Plaintiff has submitted letters that he allegedly sent to prison officials regarding his grievance, these letters do not establish exhaustion of the grievance system.  *Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself."); *Sasser v. Chase*, 2008 WL 4426034 (M.D.Ga. 2008) (CAR) (submission of letters to defendants did not suffice to exhaust prison grievance system).

Additionally, the Court notes that Georgia Department of Corrections Standard Operating Procedure ("S.O.P.") IIB05-0001 provides that "[o]nce a grievance is referred to [the] Internal Investigations Unit . . . then this is the final action that will be taken on the Grievance and terminates the grievance procedure". . . and "[t]he offender may not file a Central Office Appeal from the Warden's decision to refer the matter to Internal Investigations."  (Doc. 36-4, p. 11; S.O.P. IIB05-0001 § VI(D)( 8) (b) and (d)).  Although Plaintiff states that his grievance was referred to the "internal investigation unit", the grievance reflects that the matter was "sent to appropriate staff for review and determination regarding further investigation and action."  (Doc. 36-6, p. 3).  As such, the evidence does not establish that the grievance was referred to Internal Investigations.  Thus, the grievance procedures did not remove an appeal of the grievance as an available remedy.

The Court also notes that there is no indication that Plaintiff's use of the grievance process was prohibited by prison officials, by means of threat or otherwise.  In order to demonstrate that administrative remedies were unavailable, the Plaintiff must point to specific facts showing that officials prohibited or blocked his use of the appeals process.  *Miller v. Tanner*, 196 F.3d 1190,

1194 (11th Cir. 1999) (inmate was not required to file an appeal after being told unequivocally, and in writing, that appeal was precluded; plaintiff produced memorandum denying grievance and informing plaintiff that no appeal was available); *Turner*, 541 F.3d at 1085 (prison official's serious threats of retaliation against an inmate for pursuing a grievance render administrative remedies unavailable).   The evidence does not show that Plaintiff was told he could not appeal the Warden's response, nor does it appear that the Plaintiff's claim fell within the category of claims automatically referred to Internal Investigations.  *See* Doc. 36-4, pp. 4, 11; S.O.P. IIB05-0001 § IV (J) and § VI(D)( 8) (a) (defining Physical Force Non-Compliance as **staff** use of force not in alignment with department policy, and providing that a grievance involving sexual assault or physical force involving non-compliance is automatically forwarded to Internal Investigations and ends the grievance process).

The affidavit testimony in support of Defendant's Motion to Dismiss establishes the presence of a grievance system at Valdosta State Prison, and establishes that the Plaintiff did not complete the grievance process regarding his deliberate indifference claims prior to filing this lawsuit, as Plaintiff neither filed an appeal, nor received a response to his original grievance before bringing this lawsuit.

*Conclusion*

Inasmuch as the Plaintiff has failed to fully exhaust administrative remedies as to his claim of deliberate indifference, it is the recommendation of the undersigned that the Defendant's Motion to Dismiss be **GRANTED.**

*Objections*

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to the recommendations herein, or seek an extension of time to file objections, WITHIN FOURTEEN

(14) DAYS after being served with a copy thereof. The District Judge shall make a de novo determination as to those portions of the Recommendation to which objection is made; all other portions of the Recommendation may be reviewed by the District Judge for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

*Plaintiff's motions*

In motions filed in October 2015, Plaintiff seeks orders allowing him to proceed with various discovery requests. (Docs. 48, 51, 52). None of the proposed requests appear to relate to the issue of exhaustion of his administrative remedies. As discovery has been stayed as to all issues but exhaustion pending resolution of Defendant's Motion to Dismiss, Plaintiff's motions seeking discovery are **DENIED**.

Plaintiff's Motion for Reconsideration of the denial of his motion seeking appointment of counsel is also **DENIED**. (Doc. 45). Local Rule 7.6 provides that "Motions for Reconsideration shall not be filed as a matter of routine practice." M.D.Ga., L.R.7.6. A motion for reconsideration is appropriate if the moving party can show "(1) there has been an intervening change in the law, (2) new evidence has been discovered that was not previously available to the parties at the time the original order was entered, or (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice." *Pennamon v. United Bank*, 2009 WL 2355816,

at *1 (M.D.Ga. 2009).   None of these circumstances has been established herein.

        **SO ORDERED and RECOMMENDED**, this 11th day of January, 2016.

        s/   ***THOMAS Q. LANGSTAFF***

        UNITED STATES MAGISTRATE JUDGE

asb